UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-60040-CR-GRAHAM/GOODMAN

UNITED STATES OF AMERICA

v.

RICKEY PHILLIPS and
CARLOS ROSE,

    Defendants.
_____/

### REPORT & RECOMMENDATIONS ON MOTION TO SUPRESS

This matter is before the Court on Defendant Rickey Phillips' motion to suppress statements and all evidence seized from defendant's home and phones, filed April 22, 2011 (D.E. 30). The Court has reviewed the motion and the government's response (D.E. 36) and held an evidentiary hearing on May 4, 2011. For the reasons set forth below, the Court **respectfully recommends** that the motion be **denied**.

### BACKGROUND OF MOTION

Rickey Phillips was arrested on the morning of March 15, 2011, pursuant to an arrest warrant. According to the government's account of events, Phillips orally waived his *Miranda* rights while handcuffed in the back seat of an unmarked law enforcement SUV. Phillips then also orally consented to a search of his apartment. Once Phillips was taken back to the SAC office and booked, he then orally consented for the government to search two cellular phones found on his person during the arrest. While at the SAC office, Phillips also signed a written consent form that gave permission to search his apartment and cell phones. He also signed a form waiving his *Miranda* rights before he was interviewed for more than an hour at the SAC office.

Phillips argues in his motion to suppress that he never gave any oral consents and did not waive his *Miranda* rights until signing the written waiver at the station. Phillips argues that the search of his phones and apartment were conducted before his written

waiver.  He also contends that he was not informed of his *Miranda* rights and did not sign the *Miranda* waiver until *after* his interrogation was complete.[1]

### EVIDENTIARY HEARING

The government called three witnesses at the evidentiary hearing: Special Agent Dennis Rose, Special Agent Kimako Finey, and Special Agent Kareem Lilas.  As noted, Phillips did not call any witnesses and did not testify himself.

**Agent Rose** testified that he was the lead case-agent responsible for overseeing the operation.  On the morning of March 15, 2011, Agent Rose arrived on the scene after Phillips had already been arrested.  He introduced himself to Phillips and then returned to his vehicle to get a standard U.S. Immigration and Customs Enforcement form which contains a statement of rights, including *Miranda* rights.  At the time Rose arrived, Phillips was sitting handcuffed in the back of a law enforcement SUV.  Rose read the statement of rights to Phillips and asked Phillips if he understood each right.  Phillips said that he did.

Rose then asked Phillips for consent to search his apartment.  At the time, Rose did not know which apartment belonged to Phillips.  Phillips said that there might be some marijuana in the apartment but Rose told Phillips that he was not concerned with small amounts of marijuana intended for recreational use.  Phillips then consented to the search of his apartment.  He accompanied the agents into the building and showed them which apartment was his and which key to use to enter the apartment.  The apartment was sparsely furnished.  The agents noticed some marijuana residue on one of the tables. They remained in the apartment for 10 to 15 minutes.  However, Rose was concerned that it was not a secure area so he returned with Phillips to the SAC office.  There, Phillips was booked and taken to a holding cell.  Rose thought that they arrived at the office at approximately 9:00 a.m.

---

[1] Phillips chose not to testify at the hearing.  His counsel acknowledged that she spoke with him about the advantages and disadvantages of providing testimony and confirmed that she and Phillips made a joint, strategic decision that he would *not* testify. Accordingly, the government's testimony is unrebutted and there was no evidence to support the rhetoric (contained in the motion to suppress) that Phillips did not sign the forms until after he was interviewed.

Phillips was then removed from his holding cell and taken to an interview room. There, Agent Rose asked Phillips for consent to search his cell phones, which Phillips gave orally. The arresting agents had initially recovered two cell phones from Phillips' person. Rose then gave Phillips the statement of rights and Phillips initialed next to each right and signed at the bottom of the form indicating that the rights had been explained to him, that he understood them, and that he freely waived them. Agent Rose and Agent Brian Luomar signed the waiver form as witnesses. Rose then interviewed Phillips for approximately an hour and a half.

The waiver form states that Phillips was taken into custody at 8:00 a.m. and signed the waiver at 9:30 a.m. On cross-examination, Rose admitted that he did not fill in those times when Phillips initially signed the form but did so later in the day, while preparing to transfer Phillips to the FDC-Miami.

Phillips also signed a consent-to-search form at the SAC office before his interview began. The form permitted Agent Rose to search Phillips' cell phones and apartment. The form was witnessed by Agent Rose and Agent Kimako Finey and signed before the phones were searched.

Rose testified that the reason he did not ask Phillips to sign the statement of rights while in the back of the SUV was because Phillips was still handcuffed, Rose was concerned about the agents' safety and it would been cumbersome for Phillips to sign while handcuffed.[2]

**Agent Finey** testified that he was called by Agent Rose to assist in the arrests. On the day in question, both Agent Finey and Agent Rose first went to arrest co-defendant Carlos Rose and then separately drove to the scene, where Phillips had already been arrested. Finey saw Agent Rose return to his vehicle to retrieve the statement of rights form and heard Rose read the rights to Phillips. Agent Finey was present, standing outside the vehicle with its windows open, while Agent Rose spoke with Phillips. Agent Rose did not ask any questions to Phillips before reading him his rights. Agent Finey heard Phillips consent to the search of his apartment.

---

[2] The SUV that Phillips was in was an undercover, unmarked car which did not have a screen or cage separating the driver and front passenger from the rear seats.

3

Upon returning to the SAC office, Agent Finey also heard Agent Rose ask for consent to search the cell phones and was present when Phillips signed the waiver and consent to search forms *before* the interview and *before* the cell phones were taken to be searched. Finey's hand-written notes from that day state that at 9:37 a.m. Phillips was *re*advised of his rights and "signed off."

Finey stated that he arrived on the scene where Phillips was arrested at approximately 7:15 a.m., that he was in Phillips' apartment for no more than 20 minutes and that they left around 7:50-8:00 a.m. to go to the office.

Finally, **Agent Lilas** testified that he was part of the team tasked with arresting Phillips but was not otherwise familiar with the facts of the case. Lilas arrived at the parking lot outside Phillips' apartment before dawn with three other agents and, when he saw someone approaching Phillips' car, stopped the person, who turned out to be Phillips, and arrested him. Phillips was informed that he was arrested pursuant to an arrest warrant. Lilas remembered seizing at least one cell phone from Phillips during an initial search of Phillips' person, but did not remember how many phones he took. He also stated that he did not look through the phones.

No one questioned Phillips until Agent Rose arrived on the scene approximately 20-25 minutes after the arrest. Lilas overhead Agent Rose talking to Phillips about getting consent to search his house and also overheard the exchange about the marijuana and personal use. Lilas did not hear Rose read Phillips *Miranda* rights. Lilas went up to the apartment to do an initial security sweep but was only up there for four or five minutes. At that time, while Phillips remained in the apartment with Rose and Finey, Lilas returned to the parking lot. All three Agents testified that Phillips did not resist at all on the way to his apartment or otherwise indicate that he was withdrawing his consent to search.

After the Court heard the Agents' testimony, the government argued that it had met its burden of proof that Phillips validly waived his *Miranda* rights and orally consented to searching his cell phones and apartment. The government argued that the written waivers in this case were unnecessary because oral waivers and consents are valid, but that, in any event, the evidence established that the consent-to-search form was

signed before the cell phones were searched and the *Miranda* wavier was signed before the interrogation at the SAC office.

Phillips argued that the Court should suppress the evidence because the government failed to meet its burden. Phillips asked the Court to decline to credit the agents' testimonies because of various purported inconsistencies. For instance, co-defendant Rose signed a waiver of rights at the time he was arrested but Phillips did not sign a waiver until after he was booked at the SAC office. Agent Rose also admitted that he did not enter the times on the wavier form until after the fact, indicating, according to Phillips, that the form was signed *after* the interrogation was complete. Phillips also notes that the times given on the report by the agent who analyzed the cell phone indicate that the data was downloaded shortly after 8:30 a.m., approximately an hour earlier than would be expected under the government's version of events.

In response, the government asked the court to take judicial notice of the fact that daylight savings time began two days before Phillips' arrest and that Congress only recently changed daylight savings time to begin several weeks earlier than usual. According to the government, this time discrepancy likely owes to the fact that the computer software used to access Phillips' cell phones did not take into account the earlier daylight savings time, which only began in 2007.

## APPLICABLE LAW

Under *Miranda v. Arizona*, 384 U.S. 436 (1966), before beginning a custodial interrogation, law enforcement officers must warn the subject that he has the right to remain silent and the right to have an attorney present during questioning.[3] An individual can effectively waive his *Miranda* rights if his waiver is voluntary, knowing and intelligent. *United States v. Rush*, 144 Fed. Appx. 13, 15 (11th Cir. 2005); *United States v. Beale*, 921 F.2d 1412, 1434 (11th Cir. 1991). "The general rule is that neither a written nor an oral express waiver is required." *United States v. James*, 528 F.2d 999, 1019 (5th

---

[3] The specific rights listed on a *Miranda* form, commonly carried by law enforcement officials, are as follows: (1) that the subject has the right to remain silent; (2) that anything he said could be introduced into evidence against him in court; (3) that he had the right to have an attorney to represent him at any time during questioning; and (4) that if he wanted an attorney but could not afford one, one would be provided without charge. *See Hart v. AG*, 323 F.3d 884, 887 (11th Cir. 2003).

Cir. 1976). Rather, the prosecution must shown was that the defendant "was effectively warned of his rights and that he then intelligently and understandingly declined to exercise them" by speaking with law enforcement. *United States v. Micieli*, 594 F.2d 102, 107 (5th Cir. 1979).

The government must prove by a preponderance of the evidence that an uncounseled defendant was advised of his rights, and waived them voluntarily, knowingly and intelligently. *United States v. Glover*, 431 F. 3d 744, 748 (11th Cir. 2005); *United States v. Barbour*, 70 F. 3d 580, 584 (11th Cir. 1995).

The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Supreme Court has held that "a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). "One of the well-established exceptions to the probable cause and warrant requirements is a search which is conducted pursuant to voluntary consent." *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989). "In order for consent to a search to be deemed voluntary, it must be the product of an essentially free and unconstrained choice." *Id.* "Whether consent is voluntary is a fact question determined according to the totality of the circumstances." *Johnston v. Tampa Sports Auth.*, 530 F.3d 1320, 1326 (11th Cir. 2008)

### FINDINGS OF FACT & CONCLUSIONS OF LAW

The Court finds the testimony of all three agents credible. The agents corroborated each others' accounts regarding the sequence of events, the roles of the different agents during the arrest, apartment search, and interview, as well as Phillips' behavior throughout the entire day. What minor differences existed--for example, whether the agent's were in Phillips' apartment for fifteen or for twenty minutes--were within the range of normal discrepancies in human memory that one would expect under the circumstances. Although Lilas did not hear Rose read Phillips *Miranda* rights, this was consistent with Agent Finey's testimony that the arresting agents were further away

6

from the SUV when Rose initially interviewed Phillips. There was also no testimony to support the defendant's version of events.

There Court therefore finds that the government has proven by a preponderance of the evidence that Phillips was advised of his rights, that Phillips understood his rights, and that Phillips freely waived them as required by applicable precedents. Specifically, Phillips (1) knowingly and voluntarily waived his *Miranda* rights while in the back of the SUV with Agent Rose, (2) freely consented to the search of his apartment, and (3) freely consented to the search of his cell phones. The written waiver and consent forms signed at the office were signed *before* the phones were searched or Phillips was interviewed and, although valid, were nonetheless superfluous in this instance (given the prior oral waivers and consents). Phillips' statements during the interview at the SAC office were likewise freely provided after Phillips was advised and understood his *Miranda* rights. The Court also finds that Agent Rose acted in good faith when he later added in the times on the waiver form. The evidence indicated that this was an unintentional oversight on Rose's part.

Accordingly, the Court concludes that none of the defendant's constitutional rights were violated. Therefore, none of his statements or evidence found in his home or cell phones should be suppressed.

## **OBJECTIONS**

In order to facilitate prompt disposition of this matter, **the Court is expediting the time to file objections and responses to the objections**, if any, to this report. *See* Rule 4(b), Magistrate Judge Rules of the Local Rules of the Southern District of Florida (parties must object to a Magistrate Judge's report within 14 days "or within such other time as may be allowed by the Magistrate Judge or District Judge"); *United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (permitting district court to shorten period for objections provided by 28 U.S.C. § 636).[4]

Therefore, pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(b), the parties have until **Tuesday, May 10, 2011**, to serve and file written objections, if any, with the presiding United States District Judge. Each party may file a response to the

---

[4] The Court advised the parties at the start of the hearing of the need to file objections within 5 days.

7

other party's objections by **Friday, May 13, 2011**. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in this report and bar the parties from attacking on appeal the factual findings contained herein. *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (citing *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988)).

DONE AND ORDERED in Chambers, at Miami, Florida, on May 5, 2011.

/s/ Jonathan Goodman
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Hon. Donald L. Graham
Counsel of Record